<span style="color:red">CORRECTED</span>

# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 21-703V**
UNPUBLISHED

| | |
|---|---|
| AMY MILLER,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br>Filed: February 3, 2026 |

*Leigh Finfer, Muller Brazil, LLP, Dresher, PA,* for Petitioner.

*Meghan Murphy, U.S. Department of Justice, Washington, DC,* for Respondent.

### RULING ON ENTITLEMENT and DECISION AWARDING DAMAGES[1]

On January 12, 2021, Amy Miller filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a right shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine administered on October 22, 2018. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

**For the reasons set forth below, I find that Petitioner is entitled to compensation. I also find that Petitioner is entitled to damages of $127,644.52 (consisting of $125,000.00 for pain and suffering, plus $2,644.52 for unreimbursed expenses).**

---

[1] In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I.    Relevant Procedural History

Following the filing of this case, the parties began settlement discussions on January 31, 2023. ECF No. 28. On November 3, 2023, Petitioner indicated the parties reached an impasse in their discussions. ECF No. 38. Petitioner subsequently filed a motion for a ruling on the record and damages on June 7, 2024. Petitioner's Motion for a Ruling on the Record Regarding Entitlement & Damages ("Mot."), ECF No. 40. On October 4, 2024, Respondent filed a combined response and a Rule 4(c) Report. Respondent's Rule 4(c) Report and Response to Petitioner's Motion for Ruling on the Record Regarding Entitlement and Damages ("Resp."), ECF No. 41 Petitioner filed a reply on October 10, 2024. Petitioner's Reply Brief in Support of Entitlement & Damages ("Reply"), ECF No. 43. The matter is ripe for resolution.

## II.    Relevant Factual History

Petitioner's past medical history shows no history of right shoulder issues prior to her October 22, 2018 vaccination. Ex. 1 at 1; Ex. 2 at 32. Over three weeks later (November 15, 2018), she complained of shoulder pain to her primary care physician. Ex. 2 at 27. Petitioner specifically reported "right arm pain due to FLU shot" for two weeks. *Id.* at 27, 28. Physical examination showed "tenderness; [right] shoulder joint area mild TTP" and continued "rom limited due to discomfort, flexion/internal rotation normal." *Id.* Petitioner was prescribed Mobic for two weeks and was directed to return should the pain continue. *Id.* at 28-29.

Two months after, Petitioner saw orthopedic physician, Dr. Bradford S. Knight, in mid-January 2019 for treatment of continuing right shoulder pain. Ex. 6 at 16. Petitioner reported that after receiving a flu she had "normal soreness for a couple of days from the shot then developed a deep ache in the shoulder several days later [and] that ache ha[d] persisted and actually worsened." *Id.*  This pain continued on a daily basis, and she developed tingling and numbness of the right hand that occasionally extended to the right side of the neck. *Id.* Physical examination showed "pain radiating down into the right hand with cervical flexion and extension", reduced range of motion, but full rotator cuff strength. *Id.* X-rays were normal, and Dr. Knight's assessment was "[r]ight shoulder contusion/subacromial bursitis along with cervical radiculopathy." *Id.* The treatment plan consisted of a home exercise program, referral to physical therapy, to continue the meloxicam daily, and return in six weeks for a follow up. *Id.*

Petitioner attended eight physical therapy sessions between January 22 and February 18, 2019. Ex. 7 at 1–13, 24–27.  At the initial session, Petitioner described her

pain as "sharp" and rated 3/10 at best and 6/10 at worst. *Id.* at 24. The record also notes that Petitioner "received her Flu shot back in October and [symptoms] start to exacerbate pretty rapidly." Her injury date is listed as "10/22/2018". *Id.*

On April 11, 2019, Petitioner returned to Dr. Knight for a follow up on her right shoulder pain. Ex. 6 at 15. At this visit, Petitioner claimed to have "only minimal improvement in the right shoulder pain" and that she was still having some tingling in the right hand. *Id.* Physical examination showed full active range of motion and rotator cuff strength. *Id.* Petitioner still had mild pain in the right hand. *Id.* Petitioner's diagnoses were right shoulder bursitis and cervical radiculopathy that was "resolving with therapy." *Id.* Dr. Knight performed a corticosteroid inject. Petitioner attended twelve physical therapy sessions between June 28 and October 3, 2019. *Id.* at 29–60.

Petitioner saw Dr. Knight again on July 19, 2019, reporting "improvement" with physical therapy but still experienced pain with certain daily activities. Ex. 6 at 14. A physical examination showed active forward elevation and abduction with pain, full rotator cuff strength and possible rotator cuff tear. *Id.*

Petitioner underwent an MRI on September 6, 2019, which showed right shoulder subacromial bursitis and a possible rotator cuff tear. Ex. 6 at 13. At a follow-up with Dr. Knight, Petitioner reported having pain "almost every day" but was "having more good days than bad." *Id.* Dr. Knight discussed treatment options and Petitioner elected to pursue non operative care. *Id.* Petitioner received her second steroid injection at that time. *Id.*

On December 17, 2019, Petitioner returned to Dr. Knight and reported that her pain had improved with physical therapy and the last cortisone injection but was still present. Ex. 6 at 12. Dr. Knight assessed Petitioner with "[r]ight shoulder subacromial bursitis, proximal biceps tendinitis, [with] symptoms improving slowly." *Id.*

On January 13, 2020, Petitioner saw Dr. Usman Zafar at The Spine Care Center for right shoulder pain "that has been going on [sic] approximately October 2018." Ex. 8 at 8. Petitioner reported that her pain was primary located in the right shoulder and "does NOT" radiate from its primary location. *Id.* The pain was described as an "aching" with a pain level between 0/10 up to a 7/10 at worst. *Id.* Dr. Zafar's assessment was "[i]ncomplete rotator cuff tear or rupture of right shoulder" and performed a steroid injection. *Id.* at 9.

On July 28, 2020, Petitioner returned to Dr. Knight regarding continued shoulder pain, rating it as a 4/10. Ex. 6 at 24. Petitioner reported that she had no pain for about six

3

weeks after her last injection, but the pain had gradually returned. *Id.* Physical examination demonstrated mild tenderness of her shoulder, but full active range of motion and cuff strength. *Id.* She was diagnosed with incomplete rotator cuff tear or rupture of right shoulder. *Id.*

On August 19, 2020, Dr. Knight performed a right shoulder debridement, distal clavicle excision, and subacromial decompression. Ex. 9 at 24–39. Petitioner had an orthopedic follow up on August 25, 2020. Ex. 6 at 22. Dr. Knight noted that Petitioner was "progressing as expected." *Id.* Petitioner was noted as having "[f]ull active and passive range of motion." *Id.*

Petitioner attended 25 additional physical therapy sessions between August 25 and December 29, 2020. Ex. 7 at 64–117. At Petitioner's final session she reported her pain levels as 0/10 at best and 4/10 at worst. *Id.* at 113. She also had a full range of motion and only "slightly less strength when compared to L[eft] shoulder." *Id.* at 113-14.

Petitioner filed two declarations in support of her claim. Ex. 3, 12. She confirmed she received a vaccination on October 22, 2018, in her right shoulder, and that she never had a prior right shoulder injury. Ex. 3 at 1. Petitioner also stated that her shoulder pain began the night after her flu vaccine. Ex. 12 at 1. Further, she was gold the residual soreness could linger, and "to wait it out for two weeks…." *Id.*

## III.    Legal Standards for SIRVA

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must preponderantly prove the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48

---

[3] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury.  *See* § 11(c)(1)(A)(B)(D)(E).

hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

> (ii) Pain occurs within the specified time frame;

> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.*, NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

## IV.    Factual Findings Regarding a Table SIRVA

Review of the entire record reveals that a preponderance of the evidence supports the conclusion that Petitioner has satisfied the QAI requirements for a Table SIRVA.

### A.    Petitioner Had No Prior Left Shoulder Condition or Injury that would Explain her Symptoms

The first requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms experienced after. 42 C.F.R. § 100.3(c)(10)(i). Respondent does not dispute that Petitioner meets this criterion. I find that she has demonstrated a lack of history of pain, inflammation, or dysfunction of her left shoulder that would explain her symptoms.

### B.    Onset of Petitioner's Injury Occurred within Forty-Eight Hours of her Vaccination

The record preponderantly establishes onset of injury close-in-time to the October 22, 2018 vaccination. Petitioner first reported shoulder pain on November 15, 2018, noting she had been experiencing right arm pain for two weeks due to a flu vaccine. Ex. 2 at 27. 28. She also described the pain as normal soreness for a few days after the vaccination that developed into a deep ached several days thereafter, which persisted and worsened. Ex. 6 at 16. Further, she linked her shoulder pain to this same vaccination on multiple occasions. *See,* e.g., Ex. 2 at 28 (record from November 15, 2018, noting right arm pain due to the flu vaccine); Ex. 6 at 16 (record from January 18, 2019 reporting normal soreness after the vaccine that developed into pain that "persisted and actually worsened").

Respondent argues that Petitioner sought treatment more than three weeks after her vaccination, and reported two weeks of shoulder pain. Resp. at 6. She also reported developing a deep ache several days after the vaccine. *Id.*

6

While there are some inconsistencies in Petitioner's reporting, when the record is viewed in its entirety there is ample evidence to find proper onset began near in time to the vaccination. Further, Program petitioners are not required to marshal records setting forth with chronographic specificity the precise day and hour that their onset manifested. As noted above, Petitioner reported pain fairly quickly after her vaccination, and repeatedly linked her shoulder pain to the October 22, 2018, vaccination.

Accordingly, there is preponderant evidence that establishes the onset of Petitioner's left shoulder pain more likely than not occurred within 48-hours of vaccination.

### C.      Petitioner's Pain was Limited to her Left Shoulder

Petitioner's pain was limited to her left shoulder. Respondent does not contest this aspect of Petitioner's claim, and there is nothing in the records to suggest otherwise.[4]

### D.      There is No Evidence of Another Condition or Abnormality

The last criteria for a Table SIRVA state that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent does not contest this aspect of Petitioner's claim.

### E.      Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Petitioner received a flu vaccine intramuscularly on October 22, 2018, in the United States. Ex. 1; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for her injury. Ex. 3; Section 11(c)(1)(E) (lack of prior civil award).

---

[4] While there are references to pain and tingling in Petitioner's hand (Ex. 6 at 15), later records definitively state her pain "does NOT" radiate from its primary location of the right shoulder. Ex. 8 at 8.

7

Based upon all of the above, Petitioner has established that she suffered a Table SIRVA. Additionally, she has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

## V.    Damages

Petitioner is seeking $130,000.00 for pain and suffering and $2,664.52 for medical expenses. Mot. at 12. Respondent did not propose a specific amount for pain and suffering, but does not dispute the $2,664.52 for medical expenses. Resp. at 11-12.

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the injury's severity and duration.

When performing the analysis in this case, I review the record as a whole to include the medical records, declarations, affidavits, and all other filed evidence, plus the parties' briefs and other pleadings. I consider prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and rely upon my experience adjudicating these cases. However, I base my determination on the circumstances of this case.

The record establishes that Ms. Miller's SIRVA involved moderate initial pain, with reports to treaters of immediate symptoms within three weeks of vaccination. Petitioner characterized her pain as "normal soreness" for a few days after the vaccination that soon developed into a deep ache that persisted and worsened. She also displayed ROM losses and impingement within the first two months that persisted over time. Partitioner's pain was described as 3/10 at best, and 6/10 at worst during her first round of physical therapy in the winter of 2019. Ex. 7 at 1-13, 24-27.

Petitioner showed steady, if slow, improvement throughout 2019, especially following her periodic cortisone injections. *See* Ex. 6 at 15 (record of a cortisone injection on April 11, 2019); Ex. 6 at 14 (record from July 19, 2019 reporting "improvement" with physical therapy); Ex. 6 at 13 (record from September 6, 2019 stating Petitioner had pain "almost every day" but "more good days than bad"). Following her third steroid injection, Petitioner also reported she was pain-free for about six weeks, but by July 28, 2020 her pain had gradually returned. Ex. 6 at 24. There are also several gaps in treatment during this period, including several two-month gaps and a six-month period between January and July of 2020, as noted by Respondent. Resp at 9-10. Petitioner ultimately underwent surgical intervention in August of 2020. By December of 2020, she showed significant improvement in her right shoulder, with pain levels described as 0-4/10, full range of motion, and only slightly less strength compared to her left shoulder.

8

Overall, Petitioner's treatment occurred over 26 months, consisted of 45 physical therapy sessions, three cortisone injections, an MRI, and surgery. Her pain was described as 3-7/10 initially, with slow, steady improvement until her surgery in August 2020.

Petitioner defends her pain and suffering as reasonable, noting that she treated for 26 months, had three cortisone injections, and significant physical therapy. She also has identified some comparable cases, citing to *Smith v. Sec'y of Health & Hum. Servs.*, No. 19-0745V, 2021 WL 2652688 (Fed. Cl. May 28, 2021) (awarding $125,000 for pain and suffering) and *Amor v. Sec'y of Health & Hum. Servs.*, No. 20-0978V, 2024 WL 1071877 (Fed. Cl. Feb. 8, 2024) (awarding $130,000 for pain and suffering). Mot. at 10-12.

Respondent argues that Petitioner's injury was not as severe as those in *Amor* or *Smith*. Resp. at 10-11. Respondent also cites to one case, *McCabe*, as comparable. *McCabe v. Sec'y of Health & Hum. Servs.*, No. 19-1916V, 2021 WL 6755494 (Fed. Cl. 29, 2021) (awarding $110,000 for pain and suffering). In *McCabe*, the petitioner underwent arthroscopic surgery, had two MRIs, two steroid injections, and eighty physical therapy sessions over two years. *Id.* at *9-10. However, his injury was not as severe as Petitioner's because his pain levels were not as consistent or consistently high as in the present case. *Id.*

The *Amor* case is the closest comparable, as it balances the severity of the SIRVA with Petitioner's course of treatment. That petitioner had five cortisone injections and underwent surgery over approximately 20 months with similar gaps in treatment due to the effectiveness of the cortisone injections. However, the *Amor* petitioner also attended far fewer physical therapy sessions - and reported more significant pain levels (6-7/10) compared to Ms. Miller's moderate levels of 3-7/10.

Balancing the severity of Petitioner's SIRVA injury, the course of treatment, and based on the record as a whole, I find that **$125,000.00** for actual pain and suffering is reasonable and appropriate in this case.

### Conclusion

**For all of the reasons discussed above, and based on consideration of the record as a whole, I find Petitioner is entitled to compensation. Further, I award Petitioner a lump sum payment of $127,644.52 (representing $125,000.00 for actual pain and suffering and $2,644.52 for unreimbursed medical expenses) to be paid**

through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement to Petitioner.

This amount represents compensation for all items of damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[5]

IT IS SO ORDERED.

s/Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[5] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by each filing (either jointly or separately) a notice renouncing their right to seek review.